

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

December 30, 1957

Honorable H. C. Pittman, Jr.,
Chairman, Industrial Accident
   Board,
Walton Building,
Austin, Texas

Opinion No. WW-333.

Re: Effect of Section 2 of
House Bill No. 433, Acts
55th Legislature, Regular
Session, 1957 (Chapter 397,
page 1186) on authority of
Industrial Accident Board
to approve compromise set-
tlement agreements.

Dear Mr. Pittman:

In your letter of November 8, 1957, you ask:

"Will you give us your opinion as to whether
or not this Board has authority to approve a Compro-
mise Settlement Agreement which closes the liability
of an insurance carrier for future medical and hos-
pital expense under the Workmen's Compensation Act
as amended, i.e. does the word 'award' and the wording
used in the amendment to Section 5 apply to compromise
settlements and take precedence over Section 12, Art-
icle 8307?"

You further point out that Section 12 of Article 8307,
Revised Civil Statutes, gives the Board authority to approve
compromise settlement agreements under certain conditions, and
that House Bill No. 433, amending Section 5 of Article 8307,
changes the liability of insurance carriers as to medical and
hospital expenses.

Section 2 of House Bill No. 433 reads as follows:

"Sec. 2.  Section 5 of Article 8307, Revised
Civil Statutes of Texas, 1925, as amended, is hereby
amended by adding a new paragraph at the end of said
Section to read as follows:

"'Notwithstanding any other provision of this
law, as amended, no <u>award</u> of the Board, and no judgment

of the court, having jurisdiction of a claim against the association for the cost or expense of items of medical aid, hospital services, nursing, chiropractic services, medicines or prosthetic appliances furnished to an employee under circumstances creating a liability therefor on the part of the association under the provisions of this law, shall include in such <u>award</u> or judgment any cost or expense of any such items not actually furnished to and received by the employee prior to the date of said <u>award</u> or judgment. The first such final <u>award</u> or judgment rendered on such claim shall be <u>res judicata</u> of the liability of the association for all such cost or expense which could have been claimed up to the date of said <u>award</u> or judgment and of the issue that the injury of said employee is subject to the provisions of this law with respect to such items, but shall not be <u>res judicata</u> of the obligation of the association to furnish or pay for any such items after the date of said award or judgment. . . ." (Emphasis ours)

The remainder of the paragraph provides for continuing jurisdiction of the Board over the claim for additional medical expenses and for appeals to the courts from each successive award of such medical benefits.

The added paragraph relates only to <u>awards</u> (or denials) of medical aid and, in our opinion, does not have any bearing on the function of the Board in approving compromise settlement agreements under Section 12. The making of awards and the approval of settlements are two distinct functions of the Board. "The Board's approval of a compromise settlement agreement is not an award of compensation . . . Neither is it an order denying compensation." <u>Commercial Casualty Co. v. Hilton</u>, 187 S.W. 2d 1081 (Comm. App., opinion approved by S. Ct.). The Board is prohibited from <u>awarding</u> the workman any money for future medical aid, but there is nothing in the Act which would bar or diminish the right of the parties to enter into a contract settling their rights and liabilities with respect to future medical expenses of the kind referred to in the amendment. There being no amendment to Section 12, and there being no mention elsewhere in the Act of the role the Board is to play in the approval or disapproval of compromise settlement agreements with respect to future medical aid, the conclusion seems inescapable that the Legislature intended no change with respect thereto.

The purpose of the amendment to Section 5 was to enable the workman to obtain unlimited medical treatment. Although his claim or cause of action is broken down into separate periods of six months each, there is nothing in the Act to indicate that his claim for future medical aid may not be settled by a

compromise settlement agreement once and for all. It is to be assumed that the Legislature was cognizant of the rules of the Board which require a showing that maximum recovery has been reached before it will approve compromise settlements, and that the Legislature contemplated that the Board would discharge its responsibility to protect the injured workman in this type of settlement agreement, as it had done under the pre-existing law where settlement agreements have embraced liability for future medical treatment.

Therefore, it is our opinion that the amendment to Sec. 5 of Art. 8307 does not alter the authority of the Industrial Accident Board under Sec. 12, and the Board has authority to approve compromise settlements which close the liability of an insurance carrier for future medical and hospital expenses.

### SUMMARY

Section 2 of House Bill No. 433, Acts of the 55th Legislature, Regular Session, 1957 (Chapter 397, page 1186 at 1192) amending Section 5 of Article 8307, Revised Civil Statutes, does not alter the authority and duty of the Industrial Accident Board under Section 12 with respect to the approval of compromise settlement agreements, and this authority extends to agreements which terminate the liability of the carrier for future medical and hospital expenses.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Ralph R. Rash
Assistant

Maco Stewart
Assistant

RRR:mg:pf

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
J. C. Davis, Jr.
W. V. Geppert
Leonard Passmore
REVIEWED FOR THE ATTORNEY GENERAL
By: James N. Ludlum.